1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TONY C.,

               Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

Case No. 3:24-cv-05943-TMC

ORDER REVERSING DENIAL OF
BENEFITS AND REMANDING FOR
FURTHER PROCEEDINGS

Plaintiff Tony C. seeks review of the denial of his application for Social Security Disability Insurance Benefits ("DIB"). Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by failing to properly evaluate Plaintiff's mental health testimony and the medical opinion evidence. *See generally* Dkt. 8. After reviewing the record, the Court concludes that the ALJ erred in finding that Plaintiff is not disabled. The Court accordingly REVERSES the Commissioner's final decision and REMANDS the case for further proceedings.

## I.    PROCEDURAL HISTORY

Plaintiff's DIB application under 42 U.S.C. § 423 (Title II) of the Social Security Act was denied both on initial review and on reconsideration. Dkt. 6, Administrative Record ("AR") 101, 114–17. Plaintiff requested a hearing regarding his application, which was held before the ALJ on September 13, 2023. AR 43–69, 119. On February 5, 2024, the ALJ issued a written decision,

finding that Plaintiff was not disabled under the Social Security Act. AR 22–36. Plaintiff sought

review from the Appeals Council. AR 181–83. The Appeals Council denied Plaintiff's request

for review, concluding that Plaintiff's reasons for challenging the ALJ's decision did not provide

a basis for changing the outcome of the decision. AR 6–11. Plaintiff filed a complaint in this

Court on November 18, 2024. Dkt. 3. Defendant filed the sealed Administrative Record on

January 15, 2025. Dkt. 6. Defendant responded, Dkt. 10, and Plaintiff replied, Dkt. 11. The case

is ripe for the Court's consideration.

## II.     BACKGROUND

Plaintiff was born in 1975 and was 43 years old on the alleged date of disability onset of

November 14, 2018. AR 70. Plaintiff completed his high school education but at a third-grade

reading level. AR 78, 59; *see* AR 1104. He was in special education classes throughout his

schooling. AR 1115–24. From January 2010 to November 2019, Plaintiff was employed by

Stone Northwest working as a blade repairer. AR 201, 227. According to the ALJ, Plaintiff

suffers from the following severe impairments: cervical spine condition, depressive disorder, and

borderline intellectual functioning/intellectual disorder. AR 25. Despite these impairments, the

ALJ found that Plaintiff had the following residual function capacity ("RFC"):

> the claimant can occasionally climb; can occasionally balance, stoop, kneel, crouch,
> and crawl; can occasionally reach overhead bilaterally; can understand, remember,
> and carry out simple instructions; and can have occasional contact with the general
> public and coworkers.

AR 28.

Relying on the analysis of the vocational expert, the ALJ concluded that there were jobs

in the national market that Plaintiff could perform: production assembler, packager, electrical

accessories assembler, and electronic bench worker. AR 35.

## III.    DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1999)).

Plaintiff alleges that the ALJ made two errors in denying his application: (1) the ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony; and (2) the ALJ did not properly evaluate the medical opinions of Dr. Peter A. Weiss and Kate Cousineau, PA. Dkt. 8 at 3–12.

### A.    Plaintiff's Symptom Testimony

During the September 13, 2023 hearing, Plaintiff testified about limitations with respect to his mental health. AR 45–69. He testified, "I've always had nervous nerve problems" and explained, "I grew up in—my mom drinks, my dad drinks and I was the middle child. It was hard to live the way we were brought up." AR 57. Plaintiff noted that he "went through special ed all the way through school[.]" AR 58–59. When asked whether he could make change when he went out shopping, Plaintiff responded, "No, I leave that up to my wife." AR 63. Plaintiff explained that math was difficult for him. AR 63–64.

In the functions report, Plaintiff stated that the "pain medicine cause[s] [him] to be tired." AR 250. Plaintiff reported that he "[has] no friends," "only goes to places with [his] wife," and "[does not] like being around big crowds." AR 254. Plaintiff explained that he does not follow written instructions because his reading and spelling skills "are not good" and that he does not follow spoken instructions well either. AR 255. Finally, Plaintiff reported that he "can't handle stress" and was "not good" at handling changes in routine. AR 256.

1    The ALJ discounted Plaintiff's symptom testimony, concluding that while "the

2    claimant's medically determinable impairments could reasonably be expected to cause the

3    alleged symptoms," the "claimant's statements concerning the intensity, persistence and limiting

4    effects of these symptoms are not entirely consistent with the medical evidence and other

5    evidence in the record[.]" AR 29.

6    Where, as here, an ALJ determines a claimant has presented objective medical evidence

7    establishing underlying impairments that could cause the symptoms alleged, and there is no

8    affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to

9    symptom severity by providing "specific, clear, and convincing" reasons supported by

10   substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citation omitted).

11   "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is

12   clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir.

13   2022). Still, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is

14   not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763

15   F.3d 1154, 1163 (9th Cir. 2014) (cleaned up).

16   In his decision, the ALJ recited Plaintiff's educational records, specifically referencing

17   Plaintiff's IQ scores as a child. AR 31 ("At age six, the claimant's full-scale IQ on the Wechsler

18   Intelligence Scale for Children was 75 . . . [at] 12, the full-scale IQ score was 81 . . . [and] [a]t

19   age 15, the full-scale IQ was 73."). The ALJ noted that his "[a]cademic scores were well below

20   grade levels, although the claimant was improving." *Id.* The ALJ then stated that "[d]uring a

21   September 2008 examination, Scott Alvord, PsyD, diagnosed depressive disorder, alcohol

22   dependence, and rule out borderline intellectual functioning and/or a learning disorder." *Id.*; *see*

23   AR 1074.

24

Despite pointing to parts of the record, the ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's testimony regarding the severity of his mental health limitations. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884–85 (9th Cir. 2006) ("While an ALJ may certainly find testimony not credible and disregard it as an unsupported, self-serving statement, we cannot affirm such a determination unless it is supported by specific findings and reasoning.") (cleaned up). For example, the ALJ did not explain how the records showing Plaintiff's IQ and academic scores are inconsistent with Plaintiff's testimony. *See id.* Plaintiff's function report stated that he was not good at following written and spoken instructions, which is in fact consistent with Plaintiff's statements about being in special education as a child and struggling in school. *See* AR 254–55. And even though the ALJ cited a psychological evaluation diagnosing Plaintiff with depressive disorder and acknowledging possible borderline intellectual functioning and/or a learning disorder, the ALJ provided no reasoning to show how the diagnosis contradicts Plaintiff's testimony about his mental health limitations. *See* AR 31, 1074.

With respect to Plaintiff's testimony on his depressive disorder, the ALJ wrote:

> The file does not show ongoing counseling for depressive disorder. At the November 2021 consultative exam, Dr. Weiss observed that the claimant had normal speech and was friendly. The claimant was taking Citalopram. The claimant reported auditory hallucinations at times, and these voices told him negative things. The claimant felt depressed, and he said that his sleep and appetite were poor. He described a low energy level, and he had lost interest in activities that he used to enjoy. He had feelings of hopelessness. He reported difficulty concentrating. During the mental status exam, the claimant was alert and oriented. His recent memory was less than adequate, but remote memory was very good. Dr. Weiss wrote that judgment was adequate. The claimant did not perform Serial Sevens or Serial Threes. He was able to count backwards from 20 to 1 but skipped the number 7. Calculations were poor. Attention and concentration were less than adequate, although insight appeared good. Dr. Weiss diagnosed major depressive disorder.

AR 31.

1    The Court agrees with Plaintiff that "the ALJ merely restates some . . . of Plaintiff's

2    allegations and recites the medical information" and fails to "connect any specific mental

3    allegation made by Plaintiff with conflicting evidence." Dkt. 8 at 11; *see Brown-Hunter v.*

4    *Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (holding that it was insufficient for the ALJ to "simply

5    state[] her non-credibility conclusion and then summarize[] the medical evidence supporting her

6    RFC determination"); *Robbins*, 466 F.3d at 884 ("[T]he ALJ did not provide a narrative

7    discussion that contains specific reasons for the finding . . ., supported by the evidence in the

8    case record; nor was his brief notation sufficiently specific to make clear . . . the weight the

9    adjudicator gave to the individual's statements and the reasons for that weight, as he is required

10   to do.") (cleaned up).

11       The ALJ pointed to Plaintiff's failure to seek ongoing counseling for his depression, but

12   he did not explain how the lack of treatment discredits Plaintiff's symptoms testimony. *See*

13   AR 31; *Ghanim*, 763 F.3d at 1163. And importantly, the Ninth Circuit has cautioned against

14   rejecting a claimant's assertion of depression based on the claimant's failure to seek treatment.

15   *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is a questionable practice to

16   chastise one with a mental impairment for the exercise of poor judgment in seeking

17   rehabilitation.") (cleaned up).

18       The ALJ also mentioned that Plaintiff had "normal speech and was friendly," was "alert

19   and oriented," and his "judgment was adequate" during the psychological evaluations. AR 31.

20   But again, this evidence alone is not inconsistent with Plaintiff's reported symptoms. *Id.* The

21   Ninth Circuit has held that "observations of cognitive functioning . . . [such as] good eye contact,

22   organized and logical thought content, and focused attention . . . [and] smiling very brightly" do

23   not contradict a claimant's reported symptoms of depression and social anxiety. *Ghanim*, 763

24   F.3d at 1164. Instead, "treatment records must be viewed in light of the overall diagnostic

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 6

record." *Id.*; *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Here, the same medical report stating that Plaintiff performed adequately in areas of judgment, information, and insight also revealed that Plaintiff performed less than adequately on attention and concentration, abstract thinking, calculation, and recent memory. *See* AR 791–92. Dr. Weiss therefore concluded that, "based on his treatment history, his symptoms of depression appear to be chronic and he appears likely to manifest some symptoms of depression even with treatment." AR 792. The Ninth Circuit has recognized that mental health symptoms may fluctuate. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). Beyond limited "observations of cognitive functioning," the ALJ did not point to or discuss any other evidence inconsistent with Plaintiff's testimony about his depressive disorder. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion is insufficient for our review.") (cleaned up). Thus, without further explanation, discounting Plaintiff's statements about his mental health symptoms was legal error. *Robbins*, 466 F.3d at 882.

The Commissioner argues that the ALJ reasonably discounted Plaintiff's symptom allegations based on treatment notes that stated Plaintiff exhibited normal speech and behavior. Dkt. 10 at 3 (citing AR 439, 445, 455, 502, 560, 839, 842). The Commissioner further asserts

that Plaintiff reported going to dirt track races and shopping in stores, which was inconsistent with Plaintiff's testimony about his mental health limitations. *Id.* at 4 (citing AR 51, 236–37, 463). The Commissioner, however, may not substitute its own analysis and make findings that the ALJ did not. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (holding that "[i]t was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss"); *Treichler*, 775 F.3d at 1103 ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). The ALJ therefore failed to provide adequate reasons for discounting Plaintiff's mental health testimony.

Finally, this error was not harmless because it resulted in an RFC that excluded limitations Plaintiff testified about, such as difficulties concentrating, making calculations, and handling stress and changes in routine. *See* AR 57, 63–64. And since "that RFC, in turn, resulted in a non-disability determination, these errors were prejudicial." *Stramol-Spirz v. Saul*, 848 F. App'x 715, 718 (9th Cir. 2021) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006)).

**B.    Medical Opinion Evidence**

ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness, with the two most important factors being "supportability" and "consistency." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022); 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Supportability concerns how a medical source supports a medical opinion with relevant evidence, while consistency concerns how a medical opinion aligns with other evidence from medical and nonmedical sources. *Woods*, 32 F.4th at 791–92; *see also* 20 C.F.R. §§ 404.1520c(c)(1)–(c)(2); 416.920c(c)(1)–(c)(2). "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by

substantial evidence." *Woods*, 32 F.4th at 792. Although ALJs "should endeavor to use these two terms of art—'consistent' and 'supported'—with precision," such exactness is not required when the ALJ's meaning is "clear from context." *Id.* at 793 n.4. Finally, an ALJ's finding that a medical opinion lacks either consistency or supportability is enough to find an opinion unpersuasive. *See id.* at 792–94 (upholding finding that medical opinion was unpersuasive where ALJ found opinion inconsistent but supported).

### 1.    *Dr. Peter A. Weiss*

Dr. Weiss completed a psychological evaluation on November 11, 2021. AR 789–92. Dr. Weiss reviewed Plaintiff's medical history and progress notes from office visits to Dr. Evan Nelson and Stephanie Nass, N.P. AR 789. He noted that Plaintiff was taking Citalopram 50 mg daily for depression, which was prescribed by his primary care doctor. *Id.* Dr. Weiss then performed a mental status examination and concluded that Plaintiff "appears to be experiencing significant impairment from Major Depressive Disorder." AR 792. Dr. Weiss explained:

> He exhibited mild to moderate impairment in short-term memory, which is probably attributable to concentration problems induced by his depression. His socialization skills appear to be moderately impaired by his depression, based on his self-report and his behavior in the interview. His sustained concentration and persistence appear severely impaired by his depression, based on his self-report, behavior in the interview, and performance on the mental status examination. The overall level of adaptive impairment due to his Major Depressive Disorder appears marked.

*Id.* Based on the evaluation, Dr. Weiss recommended that Plaintiff continue with outpatient mental health treatment for his depression. *Id.* He added that psychotherapy along with current pharmacotherapy would be helpful. *Id.* However, Dr. Weiss opined that "based on his treatment history, his symptoms of depression appear to be chronic and he appears likely to manifest some symptoms of depression even with treatment. . . . [t]herefore, the prognosis for his Major Depressive appears guarded." *Id.*

The ALJ found Dr. Weiss's opinion somewhat persuasive. AR 32. First, the ALJ found that the "marked limitation" due to Plaintiff's Major Depressive Disorder "has only a brief statement in support." *Id*. Second, the ALJ found Dr. Weiss's conclusions inconsistent with Plaintiff's ability to care for and drive his wife to dialysis three times a week. *Id.* Third, the ALJ found that the marked limitation was inconsistent with Dr. Weiss's own finding that Plaintiff could manage finances. *Id.* Lastly, the ALJ found that Dr. Weiss's finding of severe impairment on attention and concentration was based more on Plaintiff's statements than on the exam. *Id.*

The ALJ's reasoning is not supported by substantial evidence. To start, Dr. Weiss's opinion that Plaintiff's "overall level of adaptive impairment due to his Major Depressive Disorder" was marked was based on his findings in multiple areas, such as: thought content, vegetative symptoms, memory, calculation, abstract thinking, and attention and concentration. AR 790–92. This diagnosis was not supported by Plaintiff's medical statements alone—it was also based on Dr. Weiss's review of prior treatment notes and cognitive tests conducted during the mental status examination. *See, e.g.* AR 791 ("[Plaintiff] was unable to perform Serial Sevens or Serial Threes. He was able to count backwards from 20 to 1 but skipped the number 7.").

Next, the ALJ's primary evidence for discounting Dr. Weiss's opinion was that "this adaptive limitation is not consistent with the claimant's ability to care for himself and care for his wife, whom he drives to dialysis three times a week." AR 32. The ALJ, however, did not provide any further reasoning to explain how Plaintiff driving his wife to dialysis three times a week contradicts Dr. Weiss's opinion that his "sustained concentration and persistence appear severely impaired by his depression." AR 792. The "mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract" from the existence of a disability. *Wick v. Barnhart*, 173 F. App'x 597, 599 (9th Cir. 2006) ("Indeed, a patient may engage in such activities *despite* pain for therapeutic reasons,

but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved.") (cleaned up) (emphasis in original). Plaintiff need not be utterly incapacitated to be disabled. *Id.*

The ALJ further noted that Plaintiff's ability to manage funds was internally inconsistent with Dr. Weiss's finding of a marked limitation. AR 32 ("This marked limit on adaptation is internally inconsistent with a finding that the claimant could manage funds, as one who struggled this much in adapting would likely fail to manage their finances."). While an "ALJ may discount a doctor's opinion if the doctor's clinical notes and recorded observations contradict the doctor's opinion . . . an ALJ is simply not qualified to interpret raw medical data in functional terms." *Keith F. v. Comm'r of Soc. Sec.*, No. 2:20-CV-36-DWC, 2020 WL 7383351, at *4 (W.D. Wash. Dec. 16, 2020) (citations omitted). Here, the ALJ "relied on the same results from [Dr. Weiss's] psychological evaluation of Plaintiff and came to a different conclusion." *Id.* Specifically, he discounted Dr. Weiss's opinion based on his own assumption that suffering from depressive disorder should preclude a person from taking care of their finances. *See* AR 32. This is again error. *See Reding v. Berryhill*, No. C17-5589-BAT, 2018 WL 3448600, at *2 (W.D. Wash. July 17, 2018) (rejecting the ALJ's reasoning for discounting the doctor's opinion because the "ALJ's reliance on [the plaintiff's] lack of treatment at the emergency department was based solely on the ALJ's own assumption that visiting the emergency department during a migraine was a recommended or appropriate treatment.").

The ALJ also rejected Dr. Weiss's opinion that Plaintiff has a severe impairment in attention and concentration. *See* AR 32. The ALJ explained that "[w]hile Dr. Weiss found a severe impairment on attention and concentration, this was based more on the claimant's statements than on the exam." *Id.* This is not a valid basis for rejecting a medical opinion. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199–200 (9th Cir. 2008) (citation omitted) (An

"ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."). Here, there is nothing in the record to suggest that Dr. Weiss did not believe Plaintiff's description of his symptoms or that he relied more on those descriptions than his own clinical observations in reaching the conclusion that Plaintiff's attention and concentration were severely impaired. *See* AR 792 ("His sustained concentration and persistence appear severely impaired by his depression, based on his self-report, *behavior in the interview*, and *performance on the mental status examination*.") (emphasis added). Furthermore, as discussed above, *see supra* Sec. III.A, the ALJ did not provide a clear and convincing reason to discredit Plaintiff's mental health testimony. Thus, Dr. Weiss's medical opinion should not have been discounted on this basis.

Next, the ALJ rejected Dr. Weiss's finding on attention and concentration because Plaintiff could count backwards from 20 to 1, though missing one number, and that Plaintiff "was alert and oriented during the exam, and his insight was good." AR 32. The ALJ stated that Plaintiff "did not require any repetition or clarification of instructions at exam, and the exam was not lengthened by accommodating concentration deficits." *Id.* But evidence that Plaintiff completed a psychological evaluation itself does not undermine Dr. Weiss's findings that Plaintiff had serious impairments in attention and concentration based on Plaintiff's inability to perform serial sevens and serial threes. AR 791. Furthermore, other parts of the record reflect Plaintiff's issues with concentration and persistence. *See* AR 72 (medical note that Plaintiff has "[s]ustained concentration and persistence related symptom"), AR 77 (treatment note that Plaintiff's "sustained concentration and persistence appear severely impaired by his depression"), AR 85 (medical note describing Plaintiff's "limitations in: . . . completing tasks; concentration"), AR 87 (treatment note stating Plaintiff's "[s]ustained concentration and

persistence related symptoms"), AR 460 (PHQ Depression Screening results describing

Plaintiff's "[t]rouble concentrating on things, such as reading the newspaper or watching

television: 2 - more than half the days").

Finally, although the ALJ identified benign findings in Dr. Weiss's evaluation, he failed

to explain why he considered the normal results more significant than the abnormal results

supporting the opinion. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ

must do more than offer his conclusions. He must set forth his own interpretations and explain

why they, rather than the doctors', are correct."); *Kelly v. Berryhill*, 732 F. App'x 558, 561 (9th

Cir. 2018) (an ALJ must not "improperly cherry-pick[]" normal findings while ignoring

abnormal findings) (citation omitted). For these reasons, the ALJ erred in rejecting Dr. Weiss's

opinion about Plaintiff's severe impairment in attention and concentration.

### 2. Kate Cousineau, PA

On January 22, 2021, Cousineau submitted a medical source statement where she opined

that Plaintiff had a "limited ability to lift." AR 435–36. Cousineau wrote that Plaintiff could

occasionally lift up to twenty pounds and frequently lift ten pounds. AR 435. He could

frequently use his hands for fine manipulation, and occasionally raise the bilateral arms over the

shoulder level. *Id.* Cousineau noted that his pain was mild and he would need to be off task due

to the pain twenty percent of the time. AR 436. She also stated that depending on the job,

Plaintiff would need unscheduled breaks during a normal eight-hour workday, beyond the

normal fifteen-minute twice per day and lunch break. AR 436.

The ALJ found Cousineau's opinion persuasive in part. AR 33. With respect to the

consistency analysis, the ALJ found "limitations on overhead reaching" as "consistent with

treatment records, including her own observations of mild pain." *Id*. However, the ALJ found

that "the statements about needing unscheduled breaks and being off-task lack support." *Id.* He

determined that these statements were not consistent with Cousineau's own statements about mild pain and being able to lift ten pounds consistently, as well as Dr. Phillip's note that the MRI did not explain the claimant's pain. *Id.*

Plaintiff argues that even though Cousineau opined Plaintiff's pain was "mild," she still meant that Plaintiff would be off-task twenty percent of the time due to that pain. Dkt. 8 at 8. Plaintiff further contends that while "medical evidence is a relevant factor in determining the severity of the claimant's pain and its disabling effects, . . . the ALJ did not actually reject Cousineau's opinion based on a lack of supporting medical evidence; he based the rejection on an MRI that did not explain the pain Plaintiff experiences." *Id.*

The Court agrees. While the ALJ pointed to Dr. Phillip's note stating that the MRI did not explain Plaintiff's pain, *see* AR 33, Dr. Phillips also wrote, "[Plaintiff] is a 48 yo with long standing neck and arm pain." AR 1080. He then recommended that "[g]iven his atypical symptoms, . . . a nerve conduction study of the BUEs would be worthwhile. We also discussed a selective root injection on the left at C6-7 to see if this provided significant relief. I will order both." *Id.* Even though Dr. Philips acknowledged that the MRI did not account for Plaintiff's "long standing" pain, he did not reject Plaintiff's symptoms of pain. *See id.* Instead, he recommended further testing, which is not inconsistent with Cousineau's opinion that Plaintiff experienced mild pain which would require unscheduled breaks based on the nature of the job. *See* AR 436.

For the supportability analysis, the ALJ wrote only that "the statements about needing unscheduled breaks and being off-task lack support." AR 33. The ALJ provided no other explanation to "clarify his reasoning for dismissing the opinion." *Nifateus Y.B. on behalf of I.R.Y.B. v. Comm'r of Soc. Sec.*, No. 3:23-CV-6003-DWC, 2024 WL 3024884, at *3 (W.D. Wash. June 17, 2024). In the absence of further explanation, the Court cannot conclude that the

ALJ's decision to discount Cousineau's opinion was supported by substantial evidence. *See id.* ("Without any further explanation as to why the ALJ found the opinion inadequate, the Court cannot review the ALJ's reasoning on this point.") (citation omitted).

The Commissioner argues that "Cousineau did not identify any objective medical evidence that would support the need for these limitations or provide an explanation for why the evidence demonstrates a need for additional breaks or time off tasks." Dkt 10 at 9. The Commissioner also points to treatment visits where Cousineau noted that "recent electrocardiogram, echocardiogram, and stress tests had all been normal and physical exams showed normal findings, including regular heart rate and rhythm, blood pressure in the normal range, and normal pulmonary effort and breath sounds." *Id.* (citing AR 453–54, 456–57). The Commissioner further notes that "an MRI in 2023 showed moderate left foraminal stenosis but otherwise only mild degenerative changes and no significant central canal stenosis, which care providers indicated would not cause the arm pain Plaintiff had reported." *Id.* (citing AR 1080).

But again, this Court may only consider the credibility determination that the ALJ has provided and cannot affirm a decision based on evidence that the ALJ did not discuss. *Connett*, 340 F.3d at 874; *see Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.") (citation omitted). The Court is "constrained to review the reasons the ALJ asserts," and concludes, based on the reasons provided above, that the ALJ's evaluation of Cousineau's medical opinion was not supported by substantial evidence. *Connett*, 340 F.3d at 874.

    3.    *The ALJ's errors were not harmless.*

The ALJ's errors with respect to Dr. Weiss and Cousineau's medical opinions were not harmless. These errors resulted in an RFC that excluded limitations caused by Plaintiff's mental health such as impairments in attention and concentration, handling stress, and changes in

routine. *See* AR 792. The RFC also excludes limitations that Plaintiff would be off-task twenty percent of the day, could lift only ten pounds frequently, and may need to take unscheduled breaks during the workday. *See* AR 435–36. Had the ALJ properly evaluated the medical opinion evidence, the RFC may have included these additional limitations, or the ultimate determination of disability may have changed. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective"); *Stramol-Spirz*, 848 F. App'x at 718 ("Because that RFC, in turn, resulted in a non-disability determination, these errors were prejudicial.") (citation omitted); *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017) ("When there are outstanding issues that must be resolved before a determination can be made, or if further administrative proceedings would be useful, a remand is necessary.") (citation omitted). Thus, the court remands this case to the agency for further proceedings consistent with this Order.

## IV.    CONCLUSION

Based on these reasons and the relevant record, the Court ORDERS that this matter be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration consistent with this order. On remand, the ALJ is instructed to reassess Plaintiff's symptom testimony and to reevaluate the medical record. The Clerk is directed to enter judgment for Plaintiff and close the case.

Dated this 30th day of May, 2025.

Tiffany M. Cartwright
United States District Judge